UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Kenneth Garcia,
Judith Fadul,
Yazmin Delarosa,
Celeste Crespo,
      Plaintiff's,

v.

City of New York;
Michael Smyth, in his individual & Official capacity
David Rojas, in his individual & Official Capacity,
Patricio Ovando, in his Individual & Official Capacity,
Greg Larson, in his individual & Official Capacity,
      Defendants.

**COMPLAINT**

Civil Action No. _____

**15CV 7470**

RECEIVED
SEP 21 2015
PRO SE OFFICE

## I. JURISDICTION & VENUE

1.   This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of State law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. § 1331 & § 1343(a)(3). Plaintiff's seek Money Damages by way of compensation due what the injury cost and the effect said injury has had on our lives.

2.   The Southern District of New York is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFFS

3.   Plaintiff, Kenneth Garcia, on behalf of the above Plaintiffs, is presently confined within the Federal Bureau of prisons, Butner FCI-2. Was previously a resident of Bronx New York, 2825 Claflin Avenue, Apartment 4K New York 10468, as was the above Plaintiffs.

## III. DEFENDANTS

4.   Defendants, City of New York, Detectives Michael Smyth, David

Rojas, Patricio Ovando, and Greg Larson. These Officers work for the New York City Police Department as trained....Detectives in a very responsible position to protect the public, who at all times mentioned in this compaint held the position as either Detectives or Sargent.

5.    Each Defendant is sued individually and in his Official capacity. At all times mentioned in this complaint acted under the color of State law. As well as the City of New York as the Respondeat Superior.

### III. FACTS

6.    On September 10, 2012 the Detectives decided to enter the Apartment on 2825 Claflin without a warrant. Apartment 4K is where they met with their first contact outside of the apartment, Celeste Crespo, who was in her early twenties at this time, she had a 3 year old child with her as the detective questioned her about entering the apartment. These same officers had a pattern of illegally entering apartments without a warrant. Upon entry everyone within the apartment was detained in the living room. During this time Mr. Garcia and Ms. Fadul and Randy a 15 year old male, were at the local store. Upon arriving back to the apartment they discovered the Detectives already inside. Requesting to view a warrant, arguments started.

7.    The officers started searching the apartment without a valid warrant, moving into their pattern of illegal searches, and what has clearly been proven as warrantless nonconsensual searches. The Officers discovered counterfeit money, six phones, 5 laptops, approxmately two pounds of Marijuana,  a 38 Taurus in the nightstand,

8.    All residents were taken to the New York Police Department N.Y.P.D. at the 50th. Precinct. Even the teenagers that were present. Placed in

jail cells. No one was aware of the fact that the officers, in possession of the apartment keys intentionally left the door open. The two (2) days of being detained allowed for the apartment to become vandalized. Property was stolen, expensive flat screen Televisions, X Boxes, Clothing, and valuables that cannot be replaced, sentimental personal property, condoms left on the floor, all of this Unfortunate experience was discovered by Ms. Fadul once she was released and allowed to return. The Monetary amount of damages is well within the thousands, however, the punitive damages are another matter where the children that were involved in this event have been effected in a way that fear of the police officers is their reality. All of what was taken, i.e. everything, had to be replaced in which created another cost due to what was an illegal search. The attached exhibits are in support of the fact that these officers willingness to lie, and steal, to simply violate the rights of the people where they cannot qualify as credible witnesses. The Police review Board placed these officers under invest-igation for the many complaints and based upon information and belief not only suspensions, but terminations have occurred as a result of these criminal acts.

9.   The State after careful review of what was clear when certain officers were involved decided not to do anything with the case, and Mr. Garcia was released as was Ms. Fadul. The Federal Authorities were contacted due-a firearm---and the counterfeit currency discovered, the night of the illegal search. Ms. Fadul was arrested and Mr. Garcia was to give up his DNA. Ms. Fadul was eventually placed on House arrest where her life surrounded a hardship due to the constraints attached to such condition, it made life very difficult in terms of work, school taking care of the children and this was in and around Jan. 31, 2013.

By March 2013

3

Plaintiff's Mr. Garcia and Ms. Fadul were already experiencing the after affects of the illegal search and false arrest. The Federal Government had taken an interest and after seven (7) months of this Hardship the charges on Ms. Fadul were dismissed. However, there was still the conspiracy to face on the federal level.

10.  The subsequent federal charges, after the D.E.A. and the Secret Service became involved, presented even further consequences to the violations committed by the Defendants. However, separate from this complaint, is a direct result of the illegal fruit, nonconsensual search, warrantless and criminal in nature.

## IV. LEGAL CLAIMS

11.  Plaintiff's reallege and incorporate by reference paragraphs 1 - 10. That unless otherwise stated, the following legal claims are undisputed.

12.  The Non-consensual, warrantless search, false arrest and un-reasonable search and seizure violated plaintiff's Kenneth Garcia, Judith Fadul, Yazmin Delarosa, and Celeste Crespo's rights and constituted not only cruel and unusual punishment, a due process violation, but also the right to be free from unreasonable searches and seizures under the Fourth Amendment, Fourteenth Amendment, Fifth Amendments to the Constitution.

13.  The Plaintiff's have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff's have been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the relief which Plaintiff's seek.

14.  Pursuant to 42 U.S.C. § 1983 Plaintiff's can establish (1) the challenged action occurred "under color of law." And (2) the action is a deprivation of a Constitutional right or a Federal Statutory right.

4

**West v. Atkins**, 487 U.S. 2 (1988). (quoting **Allen v. N.Y.C. Police Dept.** U.S. Dist LEXIS 43776 (2010). Plaintiff's bring this claim against police officers (Detectives) for the illegal conduct, pursuant to their governmental duties and powers. This action occurred under color of law. See **Jocks v. Tavernier**, 316 F.3d 128 (2d Cir. 2003).

Plaintiff's submit the claim of a nonconsensual warrantless search in violation of the fourth amendment, where after not being given consent the Officers entered illegally. Yazmin Delarosa made a sworn Affidavit in Court, under oath, that when she opened the door, she noticed multiple officers gathered behind her sister, Celeste Crespo, refusing to let them enter--without producing a warrant. Celeste Crespo testified factually about them making request to speak with her mother, where she repeatedly shared that her Mother was not home at the time. They illegally entered the residence anyway. This Pattern of non-consensual entry violated Plaintiff's Constitutional rights. Fourth Amendment.

There has been adverse findings on these officers by the New York City review Board, (CCRB). Officer Ovando and Rojas unlawfully searched a suspects bedroom - falsely claiming to have been given consent, as they will do in this case during a trial. This unlawful entry was done only one month before the unlawful entry at Apartment 4K. The Review Board concluded the entry/search to be without permission. Officer Rojas was found willing to lie to support his unlawful entry.

Plaintiff's submit the claim of a warrantless non-consensual search, in violation of the Fourth Amendment. Where they illegally seized items creating a transaction of emotional distress for the Plaintiffs. When we look to **Tierney v. Davidson**, 133 F.3d 189-96 (2d. Cir. 1998), we find where a "warrantless search of a private home, or (apartment) are presumed to be unreasonable. (citing **Payton v. New York**, 445 U.S. 573 (1980). Exceptions to the warrant requirement for

5

a search include a search incident to arrest, or exigent circumstances-
or a hot pursuit, and certain automobile searches. See **Texas v. Brown**,
460 U.S. 730 (1983). Exigent circumstances never existed where Detective
Michael Smyth falsely claimed that Randy Delarosa proceeded down the
hallway towards the back of the apartment. This act was impossible,
Randy was at the local Store with Mr. Garcia and Ms. Fadul. None of
the above exceptions apply. Warrantless searches are only permissible
through consent.

Plaintiff's contend that the Fourth Amendment to the United States
constitution made applicable to the States by the fourteenth Amendment,
prohibits the police from making a warrantless and Non-consensual
entry into a suspects home, in order to make a routine felony arrest.
**Mapp v. Ohio**, 367 U.S. 643 (1961). Also see **Wolf v. Colorado**, 338 U.S
25-48 (1949).

Plaintiff's have experienced an extreme personal suffering caused
by the intentional and illegal negligent actions of the Defendants,
(Collectively), M. Smyth, D. Rojas, P. Ovando, and G. Larson, the
arresting officer. Making it clear that physical injury (or even
physical contact) is no longer a required element for the recovery of
damages. This is an issue of deliberate/intentional infliction of
**Emotional Distress**, and unlawful infliction of the same, to all
Plaintiffs herein. Even after being exposed by the Cities Review Board,
the deceitfulness continued.

Plaintiffs claim violations--of rights under the United States
Constitution, as well as corresponding State law violations of false
imprisonment, unlawful interrogation, illegal search and seizure.
The Plaintiff's will also submit a claim of conspiracy, in which is

6

supported by the pattern of illegal searches on record with the CCRB. Continuing to repeat the exact same conduct can only make reference to a collective agreement to do so.

The Second Circuit summarized it's position "to be arrested in the home involves not only the invasion attendant to all arrest, but also an invasion of the sanctity of the Home." This case presents too substantial of an invasion to allow without a warrant. **United States v. Reed,** 577 F.2d 412 (2d Cir. 1978).

The Constitutional term that protects individuals privacy, in a variety of settings - "The right of the people to be secure in their... houses...shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core (of the Fourth Amendment) stands the right of a man to retreat into his own, home and there be free from unreasonable governmental intrusion." **Silverman v. United States,** 365 U.S. 505 (1961).

Smyth and Larson conducted a sweep of the entire apartment without obtaining permission from any one in the apartment, having no legal basis to do so. There was nothing that would have supported their warrantless, nonconsensual search and it was not justified then, and it caused the injury claimed herein creating not only financial lost, but emotional distress and unknown damages to the children, having to experience such events. Look to **United States v. Moran Vargas,** 376 F.3d 112-16 (2d Cir. 2004)(finding purported protective sweep invalid where "[n]o facts specific to this case supported a finding that the agents reasonably believed....that anyone concealed [in the premises] posed a danger to their safety. Apartment 4K was full of children. There was no lawful court order to be there that night. See **Gandia,** 424 F.3d at 262 (2d Cir.2005).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff's respectfully pray that this Honorable Court enter judgment granting Plaintiff's:

15. Compensatory damages in the amount of $ 450,000 U.S Dollars against each defendant, jointly and severally.

16. Punitive damages in the amount of $500,000 against each defendant.

17. A jury trial on all issues triable by jury.

20. Plaintiff's cost in this suit.

21. The right to amend this Complaint due to the time constraints and the lack of legal knownledge, as a pro se complaint.

22. Any additional relief this Court deems just, proper and equitable.

Dated 9/10/2015

Respectfully submitted on behalf of all Plaintiffs on this day;

Kenneth Garcia #91977-054
Federal Correctional Complex
P.O. Box 1500
Butner North Carolina 27509

## ADDENDUM TO
## ADD ADDITIONAL PLAINTIFF'S

This Addendum is simply to add to the record additional plaintiffs.
Randy Delarosa and Brandon Delarosa, both Son's to      Judith Fadul.
They were both directly involved in the Constitutional violations,
and should be made a part as they are from this point on incorporated
within this Complaint as Plaintiffs to this matter.


Legal Term Fourth Addition; **Addendum**, something added; a supplemental
section of a document containing material
added after the document was prepared.
it may be executed simultaneously or
at a later time.

The--record shall reflect that the following names are now a part
of the Plaintiffs in this action. Kenneth Garcia, on behalf of;
**PLAINTIFF's**

Judith Fadul
Yazmin Delarosa
Celeste Crespo
Randy Delarosa
Brandon Delarosa

v.

CITY OF NEW YORK
MICHAEL SMYTH
DAVID ROJAS
PATRICIO OVANDO
GREG LARSON
All of the above are being sued
in their individual and
Official Capacity.


Respectfully submitted on this the 10th of September, 2015.

Kenneth Garcia #91977-054
Pro se
Federal Correctional Complex
P.O. Box 1500
Butner N.C. 27509

CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing complaint to be served on the Clerk of Court for the Southern District Of New York, by placing same in the legal mail system here at Butner 2. This is done under penalty of perjury pursuant to 28 U.S.C. § 1746, on this the 10th Day of September 2015.

CLERK OF COURT
500 PEARL STREET
NEW YORK NY 10007-1312

respectfully submitted

*Kenneth Garcia*

# Exhibit

unconstrained choice." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) (quotation omitted). While a person need not utter a "talismanic phrase" to indicate consent, she must do more than merely acquiesce in a show of police authority. *Id.*

A third party may consent to an entry into or search of a premises only where she has "common authority" over the area. *United States v. Matlock*, 415 U.S. 164, 171 (1974). The Second Circuit has held that a third party has such authority only where "two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992). While police may in some instances rely on a third party's "apparent authority" to consent even where she lacks actual authority, a claim of apparent authority "must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *United States v. McGee*, 564 F.3d 136, 139 (2d Cir. 2009) (citation omitted).

## B. Yazmin Delarosa did not consent to the officers' entry.

As Yazmin Delarosa has sworn in an affidavit to this Court, when she opened the door and saw multiple officers gathered behind her sister, she "refused to let [the officers] in and asked them repeatedly if they had a warrant." Delarosa Aff. ¶ 4. Ms. Delarosa's account makes sense – she would likely be hesitant to admit the officers into the apartment given that it was late at night and they were there to speak to her mother, who was not at home. Moreover, Ms. Delarosa's account was corroborated by Celeste Crespo's in-court testimony that Ms. Delarosa "said that if [the officers] don't have a warrant that they can't come in." (Tr. at 488:20-21). They

misconduct in remarkably similar circumstances, in deciding whether to credit the officers' testimony.

Credibility determinations aside, it is undisputed that Ms. Delarosa never verbally consented to the officers' entry into the apartment.[4] Indeed, no government witness could recall even asking her permission to enter. Instead, the government contends that Ms. Delarosa's consent was implied. This is incorrect. Even crediting the government's version of events, Ms. Delarosa's mere act of opening the door and moving aside, without more, did not constitute valid consent for the officers to enter.

## C. Celeste Crespo lacked both actual and apparent authority to consent.

Celeste Crespo never told the officers they could enter Apartment 4K or otherwise consented to their entry. When the officers asked if she could provide a utility bill with her mother's name on it, she said she would "try to get it for them" and then walked to the front door to knock in an effort to speak with Ms. Delarosa. (Tr. at 484:17-20). Those actions hardly constituted consent for the officers to enter. And even if she had consented to their entry, she lacked the authority to do so – she did not live there (Tr. at 478:2-7), did not have keys (Tr. at 485:16-17), and was not an overnight guest (Tr. at 479:7-20).

Nor could the officers rely on Ms. Crespo's apparent authority to grant them access to the apartment. Even if the officers initially thought she lived in Apartment 4K, it became clear she did not when she had no keys to the apartment and had to knock on the door to gain Ms. Delarosa's attention. Under those circumstances, the officers could not reasonably believe that Ms. Crespo had the requisite authority over the premises to consent to their entry.

---

[4] Though on direct examination Rojas testified that he "believe[d]" that, while at the door, Yazmin Delarosa said "okay" when told by Ms. Crespo that the officers wanted to "talk to [them]" (Tr. at 397:15-20), he made clear on cross-examination that, in fact, as far as he could recall, she "didn't say anything." (Tr. at 438:18-19).

7

nothing more. That goal could have been achieved in myriad ways less intrusive than seeking to enter the apartment, especially when officers learned immediately upon arriving on the fourth floor that the leaseholder was not at home. In sum, "there was no need for the police officers to enter [the] home in the first place. They were there for their own convenience," *Gandia*, 424 F.3d at 263, making the subsequent sweep all-the-more troubling.

## III

### Nothing that occurred inside the apartment provided the officers a lawful basis to conduct a protective sweep.

Detective Smyth's testimony that as the officers entered the apartment one of the twins present in the living room moved down the hall toward Bedroom 1 is demonstrably untrue. None of the other witness at the hearing, all of whom would have been in a better position than was Smyth to see the moving twin, saw anyone make any such movement or heard Smyth yell in a booming, authoritative voice, as he claimed to have done. Smyth's testimony on these matters simply cannot be credited. And even if a fifteen-year-old boy had moved about in his own apartment at a time when he was neither under arrest nor under any directive not to move, such movement could not have supplied the officers with a lawful basis to stop him and then sweep the entire premises. Nor did anything else that might have occurred after the officers entered the apartment provide them with a valid basis to sweep. As a result, the Court should find that the officers' initial search of the apartment was improper.

### A. Detective Smyth's testimony that one of the twins moved toward the back of the apartment cannot be credited.

Detective Smyth testified that, almost immediately after entering the apartment, a male who he claimed had been in the entrance to the living room, later identified as fifteen-year-old Randy Delarosa, "proceeded going down the hallway" toward the back of the apartment. (Tr. at

17

with officers to retrieve a twin from the back of the apartment herself (Tr. at 434:3-6), as opposed to Smyth sending the twin back to the living room on his own.

There were still other major contradictions between Smyth's testimony and that of the other witnesses. For example, Smyth testified that as he pursued the twin he yelled after him in an "authority voice" multiple times: "Police, stop. What are you doing? Stop." (Tr. at 347:6-15). At the hearing, upon Smyth demonstrating the volume he supposedly employed, the Court noted, "For the record, I would describe that as a loud yell." (Tr. at 347:10-11). Yet not one single other witness corroborated Smyth's testimony; no one heard him yell in that manner, a virtual impossibility if he was telling the truth.

The credible evidence at the hearing showed that Randy Delarosa was not even home at the time the officers entered, and so could not possibly have moved from the living room to the back of the apartment as Smyth claimed. Celeste Crespo testified that Randy had left the apartment with his mother and Kenneth Garcia to go shopping before the officers arrived, and did not return until forty-five minutes after the officers showed up at the apartment. (Tr. at 479:21-480:6, 494:5-11). Though it was shown that Ms. Crespo had previously testified in a March 2013 grand jury proceeding that both twins had been at home when the officers arrived (*see, e.g.*, Tr. at 519:10-520:4), she testified credibly at the hearing that she had been nervous in the grand jury and, as a result, had been inaccurate on certain points. (*See, e.g.*, Tr. at 502:10-11).

Crucially, Ms. Crespo's testimony that Randy was out shopping when the officers arrived corroborated Judith Fadul's sworn affidavit, which was submitted as part of her initial suppression motion. *See* Fadul Aff. ¶ 4. Ms. Fadul submitted her affidavit in April 2013, before the government put forth its version of events, and before it raised the protective sweep issue in any briefing in this case. It is simply inconceivable that Ms. Fadul had the prescience to lie about

20



Kenneth Garcia # 91977-054
Federal Correctional institution #2
P.O. Box 1500
Butner, N.C. 27509

Pro-se Bag 09/12/15

⇦91977-054⇦
Court Clerk
500 Pearl ST
NEW YORK, NY 10007
United States

RECEIVED
PRO SE OFFICE
SEP 21 2015

USM3
SDNY