UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH GARCIA, JUDITH FADUL, YAZMIN
DELAROSA, and CELESTE CRESPO,

                              Plaintiffs,

                    -against-

CITY OF NEW YORK, NEW YORK POLICE
DEPARTMENT OFFICERS MICHAEL SMYTH,
DAVID ROJAS, PATRICIO OVANDO and GREG
LARSON,

                              Defendants.

**OPINION AND ORDER**

15 Civ. 7470 (ER)

Ramos, D.J.:

Plaintiffs Kenneth Garcia, Judith Fadul, Yasmin Delarosa and Celeste Crespo, acting *pro se* and *in forma pauperis* ("IFP"), bring this action against the City of New York (the "City") and New York City Police Officers Michael Smyth, David Rojas, Patricio Ovando, and Greg Larson (collectively, the "Officer Defendants") pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiffs allege violations of their Fourth, Fifth, and Fourteenth Amendment rights arising from a warrantless search of their apartment and subsequent arrests, as well as state law claims arising from the same incident.  Before the Court is the City and Officers Smyth and Ovando's motion to dismiss[1] pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure

---

[1] Although Rojas and Larson have yet to be served, because Plaintiffs' claims against them are the same as the claims against Ovando and Smyth and suffer from the same deficiencies, the Court will treat the instant motion as if it were brought on behalf of all Defendants.  *See Hamilton v. Broomfield*, No. 95 Civ. 3241 (MBM), 1998 WL 17697, at *1 n.1 (S.D.N.Y. Jan. 20, 1998) (dismissing claims against unserved defendants because they were identical to claims against defendants who filed the motion to dismiss); *see also Johnson v. New York City*, No. 12 Civ. 4379 (KBF), 2013 WL 950870, at *3 (S.D.N.Y. Mar. 7, 2013) ("As the same conviction underlies plaintiff's claims against defendant Thomas Woods (who has not yet been served in this action), the Court dismisses the Complaint with respect to Woods *sua sponte*.").

("FRCP").  For the reasons outlined below, Defendants' motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[2]

Plaintiffs allege that on September 10, 2012, the Officer Defendants entered apartment 4K of 2825 Claflin Avenue in the Bronx without a warrant.  Complaint (Doc. 2) ¶ 3, 6.  Plaintiffs refer to themselves as "residents" of the apartment.[3]  Complaint ¶ 8.  Plaintiffs Crespo and Delarosa, who were in the apartment at the time, were immediately questioned.  *Id.* ¶¶ 6, 14.  Plaintiffs Garcia and Fadul were at a store when the Officer Defendants entered the apartment.  *Id.* ¶ 6.  Plaintiffs allege that when Garcia and Fadul returned to the apartment, an argument with the Officer Defendants ensued and they began to search Plaintiffs' residence.  *Id.* ¶¶ 6-7.  The Officer Defendants discovered counterfeit money, two pounds of marijuana, and a firearm.  *Id.* ¶ 7.  Plaintiffs were then arrested and taken to the 50th Precinct, charged with multiple crimes, detained for two days, and then released.  *Id.* ¶ 8.  During the time Plaintiffs were detained at the 50th Precinct, the apartment door was left unlocked, property was stolen, and the apartment was vandalized.  *Id.*  Plaintiffs allege that the Officer Defendants intentionally left the door open.  *Id.*

---

[2] The following facts are taken from the Complaint (Doc. 2), and the Amended Complaint (Doc. 9), which the Court accepts as true for the purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Because the Court may consider documents that are in the public record, referenced in the complaint, or integral to the complaint, the Court also considers:  (1) the April 18, 2014 opinion and order issued by Judge Furman ("Furman Order") granting defendants' (here, Plaintiffs') motion to suppress in the underlying criminal case, *United States v. Fadul, et al.*, 13 Cr. 0143 (S.D.N.Y.), Doc. 149; and (2) the indictments filed against defendants (here, Plaintiffs') and judgments of conviction in the underlying criminal docket.  *Id.* at Docs. 7, 18, 62, 206, 283, 290, 312.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (quoting *Vasquez v. City of New York*, 99 Civ. 4606 (DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000)) (noting that "'a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6),' including arrest reports, criminal complaints, indictments and criminal disposition data").

[3] However, Crespo testified that she had not lived in the apartment for four to five years, and was just visiting on September 10, 2012.  Furman Order at 13.  Additionally, the Furman Order describes Garcia as "an overnight guest," not a resident.  Furman Order at 28.

As a result of the September 10 search, Fadul, Garcia, and Delarosa were indicted for, *inter alia*, conspiracy to distribute narcotics. *See United States v. Fadul, et al.*, 13 Cr. 0143 (S.D.N.Y.), Docs. 7, 18, 62, 206.  The indicted Plaintiffs moved to suppress the evidence that the Officer Defendants seized during the September 10 search. *Id.* at Docs. 47, 57, 59.

A three-day suppression hearing was held in February 2015 before Judge Furman.  The Officer Defendants testified that they reported to the apartment "after receiving an anonymous complaint about marijuana smoking."  Furman Order at 5.  There was disagreement between the parties about whether Plaintiff Delarosa consented to the Officer Defendants' initial entry, as well as disagreement regarding the sequence of events once the Officer Defendants entered the apartment.  *Id.*  In fact, Judge Furman noted that the testimony among the Officer Defendants themselves was "not entirely consistent."  *Id.* at 8.  Officer Defendant Smyth testified that upon entering the apartment, he noticed someone (later identified as R.D., a minor) heading towards the bedroom area.  *Id.*  He thus conducted a "protective sweep"[4] of the back area of the apartment, particularly the bathroom and three bedrooms.  *Id*. at 8-9.  In one of the bedrooms, Officer Defendant Smyth discovered a gun, counterfeit money, and drug paraphernalia.  *Id.* at 9-10.  The Officer Defendants then waited for Plaintiff Fadul to return from the store to request her permission to conduct a more thorough search.  *Id.* at 12.  She gave oral consent and subsequently signed a consent form.  *Id.* at 13.  The Officer Defendants then searched the apartment again and discovered "even more evidence."  *Id.*  At this point, they arrested all of the individuals within the apartment and transported them to the precinct.  *Id*.  When the Officer Defendants obtained a search warrant later that night, they returned to the apartment and "seized

---

[4] Judge Furman defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."  Furman Order at 17.

[a] gun, [a] photocopy machine and paper cutter, drugs, drug paraphernalia, and counterfeit United States currency, among other evidence." *Id.*

In contrast to the Officer Defendants version of events, the indicted Plaintiffs testified that Delarosa did not consent to their entry, that no one was smoking marijuana, and that R.D. was not in the apartment at all when the Officer Defendants entered. *Id.* at 5-6.

In deciding whether the protective sweep was lawful, Judge Furman did not credit Officer Defendant Smyth's testimony that he observed R.D. heading towards the bedroom area, or the testimony of the other Officer Defendants to the extent it was consistent with Smyth's *Id.* at 29. Judge Furman also noted that "this is not the first case in which colorable questions have been raised about the conduct and credibility of some of the officers involved in the search." *Id.* at n.7. Judge Furman concluded that in the absence of evidence that someone ran to the back of the apartment, the evidence did "not even come close to justifying a protective sweep." Id. at 35. Consequently, Judge Furman granted the motion to suppress. *Id.* at 39-40.

Fadul, Garcia, and Delarosa subsequently pleaded guilty to conspiracy to distribute narcotics on November 25, 2014, March 17, 2015, and December 22, 2014, respectively. *Id.* at Docs. 283, 290, 312. Based on the underlying criminal docket, it does not appear that Crespo was ever charged.

## II. PROCEDURAL HISTORY

Plaintiffs filed a Complaint against the City and the Officer Defendants on September 21, 2015. Complaint (Doc. 2). Plaintiffs also filed an Amended Complaint as of right on October 29, 2015, signed by only Garcia. Amended Complaint (Doc. 9). Although the Amended Complaint largely mirrors the Complaint, the Amended Complaint includes: (1) two additional plaintiffs; (2) a request for class certification; (3) an excerpt of the Furman Order granting Plaintiffs' motions

to suppress in the underlying criminal case; and (4) additional allegations in support of Plaintiffs' intentional infliction of emotional distress claim.  Because Crespo, Delarosa, and Fadul failed to sign the Amended Complaint, on November 19, 2015, then Chief Judge Preska issued an Order directing them to submit signed declarations within 30 days.  (Doc. 15 at 3)  Judge Preska also directed the Clerk to docket the Amended Complaint as court-view only,[5] amend the caption of the case to list the newly added Plaintiffs solely as 'R.D.' and 'B.D.' because they were minors,[6] and to dismiss R.D. and B.D. from the Amended Complaint.[7]  *Id.*  Crespo, Delarosa, and Fadul timely submitted declarations on December 1, 2015.[8]  (Docs. 16-18)  Because counsel for Defendants did not enter an appearance until January 12, 2016, they did not have access to the Amended Complaint, as it was designated as court-view only.

The IFP applications were granted on December 7, 2015.  (Doc. 19)  On December 14, 2015, the Court issued an Order of Service, designating the U.S. Marshals Service ("Marshals") to effect service on all Defendants and instructing the Clerk to complete a USM-285 Form[9] for each Defendant and issue a summons.  (Doc. 21)  The Order also gave Plaintiffs (through the Marshals) 120 days from the date the summons was issued to effect service.  On December 22, 2015, a summons for each Defendant was issued and a USM-285 Form for each Defendant was hand delivered to the Marshals for service upon each Defendant.  The last day for timely service was April 20, 2016.

---

[5] The court-view only designation was removed on January 27, 2017.

[6] The Order instructed the Court "that any documents showing the full names of R.D. and B.D. be docketed as court-view only."  (Doc. 15)

[7] Defendants reiterate that pursuant to Judge Preska's order, R.D. and B.D. were dismissed and those portions of the Amended Complaint bringing claims on their behalf are now moot.  Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Supp. Mem.") (Doc. 60) at 2.

[8] However, each of these Declarations is "in response to the Court's order dated October 20, 2015" which related to the Original Complaint.  (Docs. 16-18)

[9] USM-285 is the U.S. Marshals Service Process Receipt and Return form.

The docket indicates that the City received service by mail on January 21, 2016.  (Doc. 26)  However, it provides no information regarding whether the original Complaint or the Amended Complaint was served.  The docket also indicates that the Marshals unsuccessfully attempted to serve all four of the Officer Defendants by mail.  Marshal's Receipts (Docs. 28-31).  The Marshals subsequently attempted to personally serve the Officer Defendants on February 17, 2016, noting on each process receipt that "As per Desk sgt. No officer with that name works at 50 pct."  *Id.*  In contrast with the Marshal's receipts, defense counsel concedes that Ovando and Smyth were served on February 9, 2016 and February 12, 2016 respectively.  (Doc. 49)

Based on a series of letters to the Court from both parties in January and February of 2016, it became apparent that Defendants were unaware of the Amended Complaint, which had been filed four months earlier.  (Docs. 25, 27, 35)  However, Garcia attached a copy of the Amended Complaint to a March 16, 2016 letter to the Court, thus likely providing Defendants with a copy of it for the first time.  (Doc. 35)

On June 1, 2016, Garcia filed a motion for leave to amend the Complaint to remove Plaintiff Crespo from the case for failure to provide the City with unsealing releases for the underlying police records.  (Doc. 40)  The Court denied the motion and instead directed Crespo to show cause why she should not be dismissed for failure to provide the releases, which she later did.  (Docs. 45, 56, 57)  On July 21, 2016, Defendants filed the instant motion to dismiss the Complaint.  (Doc. 46)  Plaintiffs responded to Defendants' motion on September 27, 2016.  (Doc. 54)  Defendants replied on October 5, 2016.  (Doc. 55)  Given Defendants' apparent lack of knowledge of the Amended Complaint, the Court *sua sponte* granted Defendants leave to file supplemental briefing to address additional allegations included in the Amended Complaint.  (Doc. 59)  On February 14, 2017, Defendants filed a supplemental brief.  (Doc. 60)

## III.  LEGAL STANDARDS

### A.  12(b)(5) Motion to Dismiss Standard

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, a court may look to matters outside the complaint to determine whether it has jurisdiction.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  "When a defendant challenges the sufficiency of service pursuant to Rule 12(b)(5), the plaintiff bears the burden of proving its adequacy."  *Id.*

To evaluate a 12(b)(5) motion, the Court looks to FRCP 4, which governs service of process.  Pursuant to FRCP 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). [10]  The Second Circuit has held that FRCP 4 is to be construed liberally "'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'"  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).  Incomplete or improper service may lead a court to dismiss an action "'unless it appears that proper service may still be obtained.'"  *Id.* (quoting *Grammenos*, 457 F.2d at 1070).

### B.  12(b)(6) Motion to Dismiss Standard

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.

---

[10] Effective December 1, 2015, FRCP 4(m) decreased the time to serve defendants from 120 to 90 days.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in FRCP 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'"  *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).  A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## IV.  DISCUSSION[11]

### A.  Insufficient Service under Rule 12(b)(5)

Defendants argue that service on Rojas and Larson was insufficient and the Court should *sua sponte* dismiss Plaintiffs' claims against them. [12]  Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Supp. Mem.") (Doc. 60) at 7-8.  Plaintiffs, in turn, have requested that the Court order defense counsel to provide the mailing

---

[11] Plaintiffs purport to bring this suit as a class action.  The Amended Complaint alleges that "[t]he same occurrence was experienced by all in this action (Multiple Plaintiffs), against the same Defendants, in which qualifies as a Class Action."  Amended Complaint ¶ 1.  However, a *pro se* party may not pursue class claims.  *Jaffe v. Capital One Bank*, No. 09 Civ. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) ("It is well settled law that a *pro se* plaintiff may not represent the interests of third parties.  Thus, a *pro se* plaintiff may not bring an action in which he will serve as both class representative and class counsel.") (citations omitted).  Accordingly, Defendants' motion to deny class certification is GRANTED.

[12] In their opening memorandum in support of their motion to dismiss the Complaint, Defendants argued that service upon Smyth and Ovando was also untimely.  However, they withdrew that argument in their supplemental brief. Def. Supp. Mem. at 7.

addresses of Larson and Rojas so that Plaintiffs may "cure this [service] deficiency."  Plaintiffs'

Response to Defendants' Motion to Dismiss ("Pl. Response") (Doc. 54) at 5.

At the time of the filing of the Complaint, FRCP 4(m) required that a plaintiff serve a

copy of the complaint and summons within 120 days of filing the complaint.  Fed. R. Civ. P.

4(m).  If service was not made within 120 days after filing the complaint, Rule 4(m) requires

dismissal without prejudice.  *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007).

However, "if a plaintiff shows good cause for the failure, the court must extend the time for

service."  Fed. R. Civ. P. 4(m).  Courts place the burden of proving good cause on the plaintiff.

*See Beauvoir v. United States Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) ("[A] party

seeking a good cause extension bears a heavy burden of proof.").  Ultimately, the determination

of good cause is left to the discretion of the Court.  *Zapata,* 502 F.3d at 197.

Even in the absence of good cause, under Rule 4(m), the Court has the discretion to grant

an extension of time.  *See Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012); *Tabb v. Rosemary*,

No. 12 Civ. 1520 (PAE), 2014 WL 240266, at *6-7 (S.D.N.Y. Jan. 22, 2014) (granting *pro se*

plaintiff a 60-day extension for service where plaintiff did not timely request an extension of

time or offer an explanation for his failure to do so, and instead requested the court's assistance

in effectuating service over one year after the summons for those defendants was returned

unexecuted).  The Court considers the following four factors when determining to grant an

extension of time absent a showing of good cause:  (1) whether any applicable statutes of

limitations would bar the action once refiled; (2) whether the defendant had actual notice of the

claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service;

and (4) whether defendant would be prejudiced by extending plaintiffs' time for service.  *Deluca*

*v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 67 (S.D.N.Y. 2010); *Tabb*, 2014 WL 240266 at *7.

Here, even construing Plaintiffs' Amended Complaint liberally, the Court finds that no good cause has been shown for the failure to timely serve Rojas and Larson.  The docket shows that the Marshals unsuccessfully attempted to personally serve all four of the Officer Defendants on February 17, 2016.  Plaintiffs did not bring this issue to the Court's attention until seven months later, when they submitted their Response to Defendants' motion to dismiss.  Further, Plaintiffs offer no explanation for their failure to serve Larson and Rojas, simply stating that "although the U.S. Marshal was unable to locate, the cause of action should not be dismissed." Pl. Response at 5.  Although a *pro se* litigant proceeding *in forma pauperis* is entitled to rely on service by the Marshals, Plaintiffs' reliance goes beyond what they are entitled to under Second Circuit law.  *See Meilleur*, 682 F.3d at 63 ("If . . . it becomes apparent that the Marshals will not accomplish [service] by the Rule 4(m) or court-ordered deadline, [plaintiff] must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.").

However, in the exercise of its discretion, the Court will grant an extension even in the absence of good cause.  On balance, the factors weigh in favor of granting an extension.  First, although there is no evidence that Larson and Rojas have actual notice of the claims against them, defense counsel was aware of the claims well within the time frame allowed by FRCP 4(m) and contended that they "anticipated representing" Larson and Rojas.  Defendants' June 24, 2016 Letter to the Court (Doc. 43).  "[T]he 'core function' of service is to supply notice 'in a manner and at a time that afford the defendant a fair opportunity to answer the complaint and present defenses and objections.'"  *Bunim v. City of New York*, Nos. 05 Civ. 1562-1574 (KMK), 2006 WL 2056386, at *4 (S.D.N.Y. July 21, 2006) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, LP, 197 F.R.D. 104, 111 (S.D.N.Y. 2000)) (finding that this factor favored

plaintiffs even though "some of the individually named Defendants may not have had notice" because "the City has had actual notice").

Second, Larson and Rojas would not be prejudiced by an extension.  As noted above, Corporation Counsel has had an opportunity to prepare a defense for the Officer Defendants, and indeed, has already begun to prepare a defense for Smyth and Ovando.  *Bunim*, 2006 WL 2056386, at *4 (noting that the opportunity to prepare a defense was a factor to consider when determining if defendants will be prejudiced by an extension).  No evidence has been presented to suggest that the four individual Officer Defendants' defense would differ substantially. Further, discovery has not begun, no witnesses are alleged to have become unavailable during this time, and Defendants may still file a motion for summary judgement.  *AIG*, 197 F.R.D. at 111 (noting that witness availability, extent of discovery, and ability to file a motion for summary judgment are factors to consider when determining if defendants will be prejudiced by an extension).

Lastly, based on the face of the Complaint and absent any tolling, the statute of limitations would bar the action once refiled.[13]  Plaintiffs' intentional infliction of emotional distress claim is subject to either a one year or a one-year-and-90-day statute of limitations, which accrued on the date of the injury.  *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) (noting that the statute of limitations for an intentional infliction of emotional distress claim is normally one year, but one-year-and-90-days when suing the City or an individual whom the City must indemnify).  Here, Plaintiffs first filed their original Complaint on September 21, 2015. Because the injury took place on September 10, 2012, Plaintiffs' claim would be barred if refiled.

---

[13] The Court notes that absent any tolling, Plaintiffs' claims appear to have been time barred when the Complaint was first filed on September 21, 2015.  However, Defendants have not argued for dismissal based on statute of limitations, and the Court will not raise the issue *sua sponte*.  *Kropelnicki v. Siegal*, 290 F.3d 118, 131 n.7, (2d Cir. 2002) ("[A] district court 'ordinarily' should not raise a statute of limitations defense *sua sponte*.").

Plaintiffs' false arrest and illegal search and seizure claims brought under § 1983 are subject to a three-year statute of limitations, which accrued "'when the plaintiff kn[ew] or ha[d] reason to know of the injury.'"  *Allen v. Antal*, No. 15 Civ. 3252, 2016 WL 7234682, at *1 (2d Cir. Jan. 14, 2016) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).  Absent any tolling, Plaintiffs had reason to know of their injuries, at the latest, when they were released from NYPD custody on September 12, 2012.  Therefore, the action would be time barred if refiled.  Plaintiffs' false arrest claim brought under New York State law is subject to a one year statute of limitations, which accrued when Plaintiffs were released from jail on September 12, 2012.  *Id.* at *2.  Therefore, it would be time barred as well.  "'Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice . . . the district court [should] weigh[ ] the impact that a dismissal or extension would have on the parties.'"  *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (quoting *Zapata*, 502 F.3d at 197).  Because of this, "[c]ourts often consider the fact that the statute of limitations has run on a claim as favoring the plaintiff."  *Id.*

While there is no evidence suggesting that Larson or Rojas attempted to conceal a defect in service, that is not dispositive here. *Jordan v. Forfeiture Support Assoc.*, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013) ("Defendant has not attempted to conceal the defect in plaintiff's attempted service.  Nevertheless, this factor alone does not offset the numerous reasons that support granting plaintiff additional time to correct service of process.").  Accordingly, the request that the Court *sua sponte* dismiss for insufficient service as to Rojas and Larson is DENIED.  Plaintiffs are hereby directed to properly serve Rojas and Larson in accordance with FRCP 4(m) no later than **Tuesday, June 27, 2017**.

**B.  Section 1983 Claims**

Plaintiffs assert that the warrantless search, false arrest, and unreasonable search and seizure violated their Fourth, Fifth, and Fourteenth Amendment rights.  Amended Complaint ¶ 7. Plaintiffs also allege due process violations.  *Id.*  Defendants move only to dismiss the Fourth Amendment false arrest claims.  However, as discussed below, the Court will *sua sponte* dismiss the Fifth and Fourteenth Amendment claims.  *Webster v. Penzetta*, 458 F. App'x. 23, 25 (2d Cir. 2012) ("A district court has inherent authority to dismiss meritless claims *sua sponte*"); *Perl v. American Exp.*, No. 12 Civ. 4380 (ER), 2012 WL 2711270, at *1 (S.D.N.Y. July 9, 2012) ("The Court has the authority to screen *sua sponte* an *in forma pauperis* complaint at any time pursuant to 28 U.S.C. § 1915(e)(2)(B).").

**1.  Fifth Amendment Claim**

Plaintiffs make no allegations or offer any facts in support of their Fifth Amendment claim nor do they describe how their Fifth Amendment rights were violated.  Although the basis of Plaintiffs' Fifth Amendment claim is not clear, construing the Amended Complaint liberally, Plaintiffs' allegation that their Fifth Amendment rights were violated is likely based on an alleged due process violation.  Despite Defendants' failure to address the Fifth Amendment claim anywhere in their motion papers, the Court concludes that it must be dismissed because the Fifth Amendment only applies to claims against the federal government, and Plaintiffs have not named any federal defendants.  *Barua v. City of New York*, No. 14 Civ. 584 (NRB), 2016 WL 7494875, at *13 (S.D.N.Y. Dec. 29, 2016) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)) ("The Fifth Amendment's Due Process clause . . . applies only to the federal government, not to the states.").

## 2. Fourteenth Amendment Claim

Likewise, Plaintiffs make no allegations or offer any facts in support of their Fourteenth Amendment claim, which is mentioned just once in the Amended Complaint, nor do they describe how their Fourteenth Amendment rights were violated.  Amended Complaint ¶ 7. Despite Defendants' failure to address the Fourteenth Amendment claim anywhere in their motion papers, the Court concludes that the claim must be dismissed because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Hamilton v. City of New York*, No. 07 Civ. 3633, 3825 (DGT), 2009 WL 2226105, at *7 n.11 (S.D.N.Y. July 23, 2009) (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted).  To the extent Plaintiffs' Fourteenth Amendment claim is based upon an alleged due process violation stemming from the September 10 search, seizure, or arrest, "it is the Fourth Amendment that provides the proper analytical framework."  *Cucuta v. City of New York*, 25 F. Supp. 3d 400, 417 (S.D.N.Y. 2014).  Therefore, the Court will analyze Plaintiffs' claims as Fourth Amendment violations.

## 3. Fourth Amendment False Arrest Claim[14]

Plaintiffs bring a false arrest claim pursuant to § 1983 for their arrests on September 10, 2012.[15]  "[A] § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent

---

[14] Plaintiffs also claim injuries stemming from the initial search of their apartment.  Complaint ¶ 14.  ("[T]heir warrantless, nonconsensual search . . . caused the injury claims herein creating not only financial los[s], but emotional distress.").  Defendants have not moved to dismiss the unreasonable search claim.

[15] Defendants argue that Plaintiffs' false arrest claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Def. Supp. Mem. at 4.  Because the Court dismisses Plaintiffs' false arrest claim on the basis of probable cause, the Court need not decide whether *Heck* bars their claim.

probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  In order to establish a §

1983 claim for false arrest, Plaintiff must allege:  (1) the defendant intended to confine the

plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to

the confinement; and (4) the confinement was not otherwise privileged."  *Bernard v. United

States*, 25 F.3d 98, 102 (2d Cir. 1994).  Thus, if the Officer Defendants had probable cause to

arrest Plaintiffs, then the confinement is privileged because the existence of probable cause

constitutes a complete defense to a § 1983 false arrest claim.  *See Covington v. City of New York*,

171 F.3d 117, 122 (2d Cir. 1999).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is committing a

crime."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

"[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at

the time of the arrest objectively provided probable cause to arrest."  *Jaegly*, 439 F.3d at 153

(citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  The test is "objective rather than

subjective."  *Id.* at 154.  As long as probable cause existed that any crime has been committed,

the false arrest claim will fail.  *Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 240-41

(S.D.N.Y. 2013) ("Thus, as long as the Defendant officers had probable cause to arrest Plaintiff

for any crime, the arrests were privileged and cannot form the basis for a false arrest claim under

Section 1983."); *see also Devenpeck*, 543 U.S. at 154.

Defendants do not contest that Plaintiffs have properly alleged the first three elements of

their false arrest claim.  Thus, the only disputed element is whether the arrests were otherwise

privileged; *i.e.*, whether the Officer Defendants had probable cause to arrest Plaintiffs.  Here,

Plaintiffs acknowledge that they were arrested after the Officer Defendants discovered counterfeit money, marijuana, and a gun inside the apartment.  Complaint ¶¶ 3, 6, 7.  Upon discovery of those items, the Officer Defendants could reasonably have concluded that Plaintiffs were committing, or had committed a crime.  Therefore, Plaintiffs' own allegations establish probable cause.  *See El v. City of New York*, No. 14 Civ. 9055 (GHW), 2015 WL 1873099, at *6 (S.D.N.Y. Apr. 23, 2015) ("To the extent that Plaintiff's complaint can be understood as alleging that he was arrested after the discovery of narcotics in his vehicle, his allegations establish that there was probable cause for his arrest.").

Moreover, even if, as Judge Furman noted, the Officer Defendants "lacked an objectively reasonable basis to conduct [the] protective sweep," Furman Order at 39, after the Officer Defendants discovered the contraband, probable caused existed for Plaintiffs' arrest.  *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (holding that although officers lacked probable cause for the initial search, "they certainly had probable cause to arrest [plaintiff] upon discovery of the handguns"); *McDermott v. City of New York*, No. 00 Civ. 8311 (LAK), 2002 WL 265127, at *5-6 (S.D.N.Y. Feb. 25, 2002) (finding that even if police officers' initial stop was unlawful, "once the [contraband] was revealed . . . there existed probable cause" to believe the plaintiff committed a crime).

Because the Officer Defendants had probable cause to arrest Plaintiffs once they found the contraband, Defendants' motion to dismiss the false arrest claim is GRANTED.

## C.  *Monell* Claim

"[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

17

official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978)).  "The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'" *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 438-39 (S.D.N.Y. 2012) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury. *Brown*, 520 U.S. at 403-04; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692).

Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipality. *Johnson v. City of New York*, No. 06 Civ. 09426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011).  First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (quoting *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish "'a causal connection . . . between the policy and the deprivation of his constitutional rights.'" *Id.* (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).  To satisfy the first requirement, a plaintiff must allege the existence of:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such

an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Id.* (citations omitted).  A plaintiff can establish *Monell* liability on the basis of a practice so persistent and widespread that it constitutes a custom or usage by alleging that the municipality was aware of a "pattern of misconduct" but did not take any action, "compelling the conclusion that" the municipality "acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  To allege the existence of a pattern of misconduct, plaintiffs "often point to the filing of other complaints and/or lawsuits bringing similar claims."  *Calderon v. City of New York*, 138 F. Supp. 3d 593, 611-12 (S.D.N.Y. 2015). These types of documents can be used to allege that a municipality was aware of or had notice "of possible or actual constitutional violations."  *Id.*; *see also Edwards v. City of New York*, No. 14 Civ. 10058 (KBF), 2015 WL 5052637, at *6 n.3 (S.D.N.Y. Aug. 27, 2015) ("It is certainly not always the case that the fact of a series of suits alleging similar claims supports a *Monell* claim. . . . Here, however, the point is one of notice. . . . [T]hey support the inference that the City was aware of the possible use of excessive force by officers prior to the incident at issue.").

The Court finds that Plaintiffs cannot satisfy the first prong necessary to establish *Monell* liability.  The Amended Complaint lacks any allegations to indicate the existence of a formally recognized policy adopted by the City.  Further, Plaintiffs do not allege that any of the Defendant Officers involved have policymaking authority, nor do they allege that the City failed to properly train and supervise its employees.

Construing the Amended Complaint liberally, Plaintiffs seem to allege that the Officer Defendants engaged in a practice of illegal actions so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials.  Amended Complaint ¶ 5.  In support of their claim, Plaintiffs attach an excerpt of the Furman Order.

19

While Judge Furman notes that "this is not the first case in which colorable questions have been raised about the conduct and credibility of some of the officers involved in the search," in each instance, Judge Furman recognizes that the Officer Defendants were in some way reprimanded. *Id.* at 29 n.7.  For example, Judge Furman notes that Larson had been placed on modified duty in July 2012 for potentially committing perjury in an unrelated case, and Ovando had been under investigation for failure to properly supervise Larson.  *Id.*  Additionally, in connection with a separate narcotics arrest in August 2012, the Civilian Complaint Review Board ("CCRB") found that Ovando and Rojas had "unlawfully engaged in a warrantless search," and that Rojas later gave the CCRB false information regarding that search, *id.,* putting the City on notice of the conduct.  *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 617-18 (S.D.N.Y. 2013) (noting that civilian complaints, including those made with the CCRB, are sources of notice to the NYPD).  Plaintiffs themselves allege that based upon the CCRB investigations, the Officer Defendants were suspended or terminated.[16]  Complaint ¶ 8.  Thus, even if the Court were to find that Plaintiffs sufficiently alleged that the City was aware of numerous instances of improper conduct by the Officer Defendants, the Court cannot find that in the face of that conduct, the municipality did nothing.  *See Pluma v. City of New* York, No. 13 Civ. 2017 (LAP), 2015 WL 1623828, at *11 (S.D.N.Y. Mar. 31, 2015) (finding that plaintiff's *Monell* claim on the basis of a widespread custom failed because the officers in questions "were either disciplined, brought to a hearing, or seriously investigated").  By acknowledging that the Officer Defendants' behavior was investigated and that they were punished as a result, Plaintiffs concede that senior policy-

---

[16] Presumably, the CCRB conducted investigations, reported its findings to the appropriate NYPD authority, and then the NYPD suspended or terminated the Officer Defendants.  *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 317 (S.D.N.Y. 2008) ("The CCRB is an independent board composed of thirteen members and vested with the 'power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the [NYPD] that allege misconduct. . . . The CCRB's findings and recommendations are submitted to the NYPD's Police Commissioner.") (internal citations omitted).

making officials did not acquiesce or tacitly authorize the improper conduct of the Officer

Defendants. *Sorlucco v. N.Y.C. Police Dep't.*, 971 F.2d 864, 871 (2d Cir. 1992) ("[B]efore the

actions of subordinate city employees can give rise to § 1983 liability, their discriminatory

practice must be so manifest as to imply the constructive acquiescence of senior policy-making

officials.").  Because of this, Plaintiffs have failed to allege a policy or custom to warrant

liability pursuant to § 1983.

Lastly, Plaintiffs claim that "[t]he City of New York is responsible as the Respondeat

Superior."  Amended Complaint ¶ 4.  However, it is well settled that a municipality cannot be

held liable pursuant to § 1983 on a theory of *respondeat superior. Monell*, 436 U.S. at 691;

*Reynolds*, 506 F.3d at 191.

Accordingly, Defendants' motion to dismiss Plaintiffs' *Monell* claim is GRANTED.

## D.  Notice of Claim Requirements Under N.Y. General Municipal Law

Defendants argue that Plaintiffs' state law claims of intentional infliction of emotional

distress, false arrest, and illegal search and seizure should be dismissed for failure to comply

with New York General Municipal Law § 50-i, which requires that before a plaintiff asserts state

tort law claims against a municipal entity or its employees,

> (a) a notice of claim shall have been made and served . . . in compliance with
> section fifty-e of this article; (b) it shall appear by and as an allegation in the
> complaint or moving papers that at least thirty days have elapsed since the service
> of such notice; and (c) the action . . . shall be commenced within one year and
> ninety days after the happening of the event upon which the claim is based

N.Y. Gen. Mun. L. § 50–i.  In order to comply with New York General Municipal Law § 50-e, a

plaintiff must serve of a notice of claim within ninety days after the claim arises.  *See* N.Y. Gen.

Mun. Law § 50-e(1)(a).  The notice of claim must include the name and address of the plaintiffs,

details of the claims, and the damages sought.  N.Y. Gen. Mun. Law § 50-e(2).  Federal courts

exercising supplemental jurisdiction over state law claims must strictly construe New York's

notice of claim requirements.  *Matthews*, 889 F. Supp. 2d at 448; *see also Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 794 (2d Cir. 1999) ("Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.").

Plaintiffs' false arrest, illegal search and seizure, and intentional infliction of emotional distress tort claims are subject to Sections 50-e and 50-i, and therefore Plaintiffs were required to file a notice of claim.  *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 384 (S.D.N.Y. 2005) (applying New York's notice of claim requirements to intentional infliction of emotional distress claims); *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 348 (E.D.N.Y. 2013) ("[T]his requirement applies with full force to the Plaintiff's causes of action sounding in unreasonable search and seizure."); *Aponte v. City of New York*, No. 14 Civ. 3989 (KMK), 2016 WL 5394754, at *8 (S.D.N.Y. Sept. 26, 2016) ("This provision applies to the false imprisonment claims brought against the City.").

Here, nothing in the Amended Complaint indicates that Plaintiffs filed the requisite notice of claim.  *See Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed.").  Even assuming that the Court could grant Plaintiffs leave to make an application to the proper state court, the notice would be filed after the expiration of the statute of limitations and would thus be improper.  *In re Dayton*, 786 F. Supp. 2d 809, 825 (S.D.N.Y. 2011) (concluding that after the statute of limitations has expired, a state supreme or county court does not have the authority to grant an extension of time to serve a notice of claim).

Because federal courts must construe New York State notice of claim requirements strictly, and Plaintiffs have failed to allege compliance, Plaintiffs' state law false arrest, intentional infliction of emotional distress, and illegal search and seizure claims are DISMISSED.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED in part and DENIED in part. The denial is solely with respect to Defendants' request that the Court dismiss *sua sponte* all claims against Rojas and Larson. Plaintiffs are directed to serve Rojas and Larson in accordance with FRCP 4(m) no later than **Tuesday, June 27, 2017**. The Amended Complaint survives to the extent that it asserts Fourth Amendment unreasonable search and seizure claims against the Officer Defendants.[17]

The parties are directed to appear for an initial pre-trial conference on **April 21, 2017 at 11:30 AM**. The Clerk of Court is respectfully directed to terminate the motion, Doc. 46.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

It is SO ORDERED.

Dated:     March 28, 2017
           New York, New York

Edgardo Ramos, U.S.D.J.

---

[17] Claims against Rojas and Larson will only proceed if Plaintiffs properly serve them by this Court's deadline.

23