UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH GARCIA, JUDITH FADUL, YAZMIN DE LA ROSA, and CELESTE CRESPO,

                Plaintiffs,

-against-

CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT OFFICERS MICHAEL SMYTH, DAVID ROJAS, PATRICIO OVANDO and GREG LARSON,

                Defendants.

**OPINION AND ORDER**

15 Civ. 7470 (ER)

Ramos, D.J.:

    Plaintiffs Kenneth Garcia, Judith Fadul, Yasmin De La Rosa and Celeste Crespo, each acting *pro se*, brought this action against the City of New York (the "City") and New York City Police Officers Michael Smyth, David Rojas, Patricio Ovando, and Greg Larson (collectively, the "Officer Defendants") on September 21, 2015. *See* Compl. (Doc. 2). Plaintiffs alleged violations of their Fourth, Fifth, and Fourteenth Amendment rights arising from a warrantless search of an apartment, where certain of the Plaintiffs lived, and subsequent arrests, as well as state law claims arising from the same incident. *Id.* Plaintiffs filed what they termed an "amended complaint" on October 29, 2015, and Defendants moved to dismiss on July 21, 2016. *See* Docs. 9, 46.[1] On March 28, 2017, the Court substantially granted Defendants' motion. *See* Doc. 61. Specifically, the Court dismissed Plaintiffs' claims under the Fifth and Fourteenth Amendments, as well as Plaintiffs' false arrest claim under the Fourth Amendment. *Id.* at 14–17.

---

[1] Plaintiffs intended for the Amended Complaint to supplement the original Complaint by "add[ing] additional information that will show a significant question of law" rather than to replace the original Complaint. *See* Doc. 9 ¶ 5.

The Court also dismissed all claims against the City pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). *Id.* at 20. However, the Court denied Defendants' motion to dismiss all claims against Defendants Rojas and Larson pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, and ordered Plaintiffs to serve those Officers by June 27, 2017. *Id.* at 13. Defendants did not seek to dismiss Plaintiffs' unreasonable search and seizure claim under the Fourth Amendment. *Id.* at 15 n.14. On September 20, 2017, Plaintiffs sought leave to file a second amended Complaint. Doc. 73. The proposed Second Amended Complaint also joins three new plaintiffs—Brandon De La Rosa ("Brandon"), Randy De La Rosa ("Randy"), and Plaintiff Celeste Crespo's daughter ("Minor Child" or "M.C."). For the reasons stated below, Plaintiffs' request is GRANTED in part and DENIED in part.

I. **FACTUAL BACKGROUND**[2]

Plaintiffs allege that on September 10, 2012, Celeste Crespo ("Crespo"), M.C., and Crespo's then-boyfriend, non-party Juan Custodio ("Custodio") were approached by the Officer Defendants on the fourth floor of 2825 Clafton Avenue. *See* Proposed Second Amended Complaint ("SAC") (Doc. 73-1) ¶¶ 14, 24. One of the officers asked Crespo whether she lived in the building; she responded that she did not, but said that she had been in the building to visit her mother. *Id.* ¶ 25. She told them her mother lived in Apartment 4K, and the Officer Defendants informed her that they were investigating a complaint about marijuana smoke from that apartment and asked her who owned the apartment. *Id.* ¶ 26. Crespo replied that no one in

---

[2] The following facts are taken from the proposed Second Amended Complaint ("SAC") (Doc. 73-1), which the Court accepts as true for the purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Because the Court may consider documents that are in the public record, referenced in the complaint, or integral to the complaint, the Court also considers: (1) the April 18, 2014 opinion and order issued by Judge Furman ("Furman Order") granting defendants' (here, Plaintiffs') motion to suppress in the underlying criminal case, *United States v. Fadul, et al.*, 13 Cr. 143 (S.D.N.Y.), Doc. 150. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Citations to docket entries in the related criminal case will be captioned "Crim. Doc."

the apartment was smoking marijuana and that her mother owned the apartment. *Id.* The officers asked for a utility bill to prove ownership, and Crespo walked them to Apartment 4K and knocked on the door. *Id.* ¶ 27.

Yazmin De La Rosa ("Yazmin") opened the door and asked the officers what they needed and whether they had a warrant. *Id.* ¶ 28. The Officer Defendants then "barg[ed] into the apartment, guns drawn," knocking down M.C. *Id.* ¶¶ 28–29. The Officer Defendants ordered M.C., Yazmin, Crespo, and Custodio into the living room and began searching the entire apartment. *Id.* ¶ 30. Crespo's brother, Brandon De La Rosa ("Brandon"), who was in the apartment at the time,[3] soon came into the living room and was also detained there. *Id.* About forty-five minutes into the search, Plaintiffs Judith Fadul ("Fadul"), Kenneth Garcia ("Garcia"), and Randy De La Rosa ("Randy"), returned to the apartment after a trip to the grocery store. *Id.* ¶¶ 14, 31. The Officer Defendants ordered them into the kitchen and told Fadul they found a gun, counterfeit money, and drug paraphernalia in the rear bedroom. *Id.* ¶ 32; Furman Order (Crim. Doc. 150) at 12. They asked for—and obtained—consent to search the entire apartment. *Id.* They then returned to the rear bedroom and engaged in another search. *Id.* ¶ 33.

At some point, the Officer Defendants ceased the search and arrested everyone in the apartment except for M.C.[4] *Id.* Defendants Smith, Ovando, and Larson took the Plaintiffs to the police precinct, while Defendant Rojas was left behind to secure the apartment. *Id.* In a subsequent search of the apartment, the Officer Defendants seized a gun, drugs, drug

---

[3] Brandon's name, as well as the name of his brother Randy, was initially kept under seal due to his status as a minor. However, these Plaintiffs are no longer minors and therefore the Court does not refer to them solely by their initials. Doc. 75.

[4] In other words, Fadul, Garcia, Crespo, Custodio, Yazmin, Brandon, and Randy were arrested.

3

paraphernalia, counterfeit United States currency, and a photocopy machine and paper cutter,. *Id.* ¶ 34.

Plaintiffs, Brandon, and Randy were all charged with gun possession and possession of marijuana. *Id.* ¶ 35. Fadul, Crespo, and Yazmin were released on recognizance; Garcia and Custodio were held on bail. *Id.* ¶ 36.[5] Garcia remained in custody for seven days. *Id.* The charges against all Plaintiffs were ultimately dropped. *Id.* ¶ 37. However, federal authorities subsequently indicted Fadul, Garcia, and Yazmin on drug, gun, and counterfeiting offenses. *Id.* ¶ 44; *see United States v. Fadul et al.*, 13 Cr. 0143 (S.D.N.Y.).

As a result of the September 10 search, Fadul, Garcia, and Yazmin were indicted for, *inter alia*, conspiracy to distribute narcotics. *See* Crim. Docs. 7, 18, 62, 206. The indicted Plaintiffs moved to suppress the evidence that the Officer Defendants seized during the September 10 search. Crim. Docs. 47, 57, 59.

A three-day suppression hearing was held in February 2014 before Judge Furman. *See* Furman Order (Crim. Doc. 150). The Officer Defendants testified that, before entering the apartment, they had received "an anonymous complaint about marijuana smoking." *Id.* at 5. There was disagreement between the parties about whether Yazmin consented to the Officer Defendants' initial entry, as well as disagreement regarding the sequence of events once the Officer Defendants entered the apartment. *Id.* In fact, Judge Furman noted that the testimony among the Officer Defendants themselves was "not entirely consistent." *Id.* at 8. Defendant Smyth testified that upon entering the apartment, he noticed someone (later identified as Randy)

---

[5] The proposed SAC does not detail what happened to Brandon and Randy.

heading towards the bedroom area. *Id.*[6] He stated that he then conducted a "protective sweep"[7] of the back area of the apartment, particularly the bathroom and three bedrooms. *Id*. at 8–9. In contrast to the Officer Defendants' version of events, the indicted Plaintiffs testified that Yazmin did not consent to their entry, that no one was smoking marijuana, and that Randy was not in the apartment at all when the Officer Defendants entered. *Id.* at 5–6.

In deciding whether the protective sweep was lawful, Judge Furman did not credit Defendant Smyth's testimony that he observed Randy heading towards the bedroom area, or the testimony of the other Officer Defendants to the extent it was consistent with Smyth's. *Id.* at 29. Judge Furman also noted that "this is not the first case in which colorable questions have been raised about the conduct and credibility of some of the officers involved in the search." *Id.* at 29 n.7. Judge Furman concluded that in the absence of evidence that someone ran to the back of the apartment, the evidence did "not even come close to justifying a protective sweep." *Id.* at 35. Consequently, Judge Furman granted the motion to suppress. *Id.* at 39.

Fadul, Yasmin, and Garcia subsequently pleaded guilty to conspiracy to distribute narcotics on November 24, 2014, December 19, 2014, and March 16, 2015, respectively. Crim. Docs. 283, 290, 312.

## II. PROCEDURAL HISTORY

Plaintiffs filed a Complaint against the City and the Officer Defendants on September 21, 2015. Compl. (Doc. 2). Plaintiffs also filed an Amended Complaint as of right on October 29, 2015, signed only by Garcia. Amended Complaint (Doc. 9). The Amended Complaint added (1)

---

[6] Defendant Ovando, however, initially did not recall seeing anyone rushing to a back room. *Id.* at 11. He later "modified" this testimony and provided inconsistent answers after further questioning from Judge Furman. *Id.*

[7] Judge Furman defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id.* at 17.

5

Plaintiffs Brandon and Randy, (2) a request for class certification; (3) an excerpt of the Furman Order granting Plaintiffs' motions to suppress in the underlying criminal case; and (4) additional allegations in support of Plaintiffs' intentional infliction of emotional distress claim. Because Crespo, Delarosa, and Fadul failed to sign the Amended Complaint, on November 19, 2015, then Chief Judge Preska directed them to submit signed declarations within 30 days. *See* Doc. 15 at 3.[8] Judge Preska also dismissed Plaintiffs Randy and Brandon from the case, because they were minors at the time. *Id.* Crespo, Delarosa, and Fadul timely submitted declarations on December 1, 2015. Docs. 16–18. Because counsel for Defendants did not enter an appearance until January 12, 2016, they did not have access to the Amended Complaint, as it was designated as court-view only.

Based on a series of letters to the Court from both parties in January and February of 2016, it became apparent that Defendants were unaware of the Amended Complaint, which had been filed four months earlier. Docs. 25, 27, 35. However, Garcia attached a copy of the Amended Complaint to a March 16, 2016 letter to the Court, thus likely providing Defendants with a copy of it for the first time. Doc. 35.

On July 21, 2016, Defendants moved to dismiss the first-filed Complaint. Doc. 46. On March 28, 2017, the Court granted in part and denied in part that motion. Doc. 61. First, the Court found that there was no good cause shown as to why Defendants Rojas and Larson were never served; although the docket shows that the Marshals unsuccessfully attempted to serve all of the Officer Defendants on February 17, 2016, Plaintiffs did not bring this to the Court's attention. *Id.* at 11. The Court, however, exercised its discretion to grant an extension, even in

---

[8] Judge Preska also granted Plaintiff's motion to proceed *in forma pauperis* on December 7, 2015. Doc. 19.

the absence of good cause, and required that Plaintiffs serve Defendants Rojas and Larson by June 27, 2017. *Id.* at 13.[9]

The Court also considered the substance of Plaintiffs' § 1983 claims. First, it *sua sponte* dismissed Plaintiffs' Fifth Amendment claim because Plaintiffs had not named any federal defendants, and the Fifth Amendment applies only to claims against the federal government. *Id.* at 14. The Court also dismissed Plaintiffs' Fourteenth Amendment claims because the Fourth Amendment, not the Fourteenth Amendment, "provides the proper analytical framework" for constitutional violations stemming from searches and seizures. *Id.* at 15 (citing *Cucuta v. City of New York*, 25 F. Supp. 3d 400, 417 (S.D.N.Y. 2014)). Turning to the Plaintiffs' false arrest claim, the Court determined that once the Officer Defendants discovered the contraband, there was probable cause to arrest all defendants, regardless of whether or not there was an objectively reasonable basis for the protective sweep. *Id.* at 17. The Court therefore dismissed Plaintiffs' false arrest claim. *Id.* The Court also concluded that *Monnell* liability could not lie because, to the extent that the City was put on notice about the Officer Defendants' history of questionable conduct, the City reprimanded the Officer Defendants and therefore neither acquiesced nor tacitly authorized the conduct. *Id.* at 20–21. Finally, the Court dismissed Plaintiffs' state law claims because Plaintiffs failed to timely file a notice of claim. *Id.* at 22.

On September 20, 2017, Plaintiffs moved for leave to file their proposed Second Amended Complaint. Plaintiffs again seek to join Plaintiffs Brandon and Randy; they also seek to join Plaintiff M.C. Plaintiffs bring ten claims: (1) illegal search and seizure against all

---

[9] The Court later terminated this portion of the motion and instructed the Clerk of Court to fill out a U.S. Marshals Service Process Receipt and Return form so that the Marshals could effect service on Defendants Rojas and Larsen. Doc. 67. By letter dated June 23, 2017, the City informed the Court that Defendants Rojas and Larsen were no longer employed by the NYPD but could be served at the NYPD's legal bureau. Doc. 66. On August 22, 2017, however, service was returned unexecuted. *See* Docs. 71–72.

7

Defendants; (2) malicious prosecution against all Defendants; (3) conspiracy to unlawfully restrain, illegally search, and falsely charge Plaintiffs against the Officer Defendants; (4) failure to supervise against the City; (5) conspiracy to provide false testimony against the Officer Defendants; (6) negligence against the City; (7) unlawful imprisonment of Plaintiffs Randy and Brandon against the Officer Defendants; (8) negligent infliction of emotional distress on Plaintiff MC against the Officer Defendants; (9) intentional infliction of emotional distress on Plaintiff MC against the Officer Defendants; and (10) negligence against the Officer Defendants. SAC ¶¶ 57–65.[10] Defendants have raised two objections with respect to the proposed SAC. First, Defendants argue that M.C. is a minor who cannot raise claims for herself *pro se*. *See* Doc. 75. Second, Defendants argue that Randy and Brandon should not be added as Plaintiffs because they entered into settlement agreements with the City of New York. *See* Doc. 77.

## III. LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15. Under Section 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed that the "liberal

---

[10] This is not how the claims are numbered in the SAC, which lists Claim 1 (including both illegal search and seizure and malicious prosecution) and then jumps to Claims 5–12.

8

spirit" of Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits." 797 F.3d 160, 190–91 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, 14 Civ. 1618 (LAK) (JCF), 2015 WL 136102 at *2 (S.D.N.Y. Jan. 9, 2015).

The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006). Following this standard, the court accepts the Plaintiff's factual allegations as true and draws reasonable inferences in favor of the Plaintiff. *Id.*

IV. **DISCUSSION**

   A. **Joinder of M.C.**

Defendants argue that M.C. cannot be joined as a plaintiff because as a minor, she cannot represent herself, nor can the other *pro se* Plaintiffs represent her. Doc. 75 at 2. A minor may

9

not proceed *pro se* and represent her own interests in court. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Nor may another non-attorney, even the minor's parent, represent her interests. *Id.*; *see also Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child. . . . It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys."). Judge Preska previously informed Plaintiffs of this when they attempted to add Plaintiffs Randy and Brandon in 2015. *See* Doc. 15 at 2. The Court therefore DENIES amendment with respect to the joinder of Plaintiff M.C.; because the claims of intentional and negligent infliction of emotional distress were brought only on her behalf, the Court DENIES amendment with respect to the addition of those claims as well.

**B.      Joinder of Brandon and Randy**

Next, Defendants argue that the Court should deny amendment of the complaint to join Plaintiffs Brandon and Randy because on March 22, 2017, Brandon and Randy Delarosa entered into settlement agreements with the NYPD that included a release of all claims against the NYPD and its employees. Specifically, they agreed to:

> [R]elease[] and forever discharge[] the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York, and all other individually named defendants and/or entities represented and/or indemnified by the City of New York . . . from any and all liability, claims, or rights of action alleging a violation of civil rights . . . which [they, or their] heirs, distributes, devisees, legatees, executors, administrators, successors and assignees had, now ha[ve] or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the Releasees . . . .

*See* Docs. 77-1, 77-2. Generally, the Court does not consider documents outside the four corners of a Complaint on deciding a motion to dismiss (and, therefore, on a motion for leave to amend). However, a district court may properly rely on "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Levine v. Bd. of Educ. of City of New York*, 152 F.3d 919, 1998 WL 386141, at *2 (2d Cir. 1998) (table decision) (quoting *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) and *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Here, although Plaintiffs did not attach the releases to the proposed SAC, they attached Plaintiff Brandon's release in a letter to the Court docketed on October 17, 2017. Doc. 76. Under these circumstances, the Court finds that the releases were documents "in plaintiffs' possession" that are appropriate to consider on a motion for summary judgment. *See Levine*, 1998 WL 386141, at *2 (considering a release signed as part of a settlement in an earlier litigation between the parties).

It is appropriate to find that amendment would be futile "on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous." *Gupta v. Headstrong, Inc.*, No. 17 Civ. 5286 (RA), 2018 WL 1634870, at *3 (S.D.N.Y. Mar. 30, 2018) (quoting *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001)). The Court finds that the terms here are clear and unambiguous. Plaintiffs Brandon and Randy have released the City of New York and its officers from all liability relating to civil rights violations that they "had, now ha[ve] or hereafter can, shall, or may have." *See* Docs. 77-1, 77-2. Even Plaintiffs acknowledge that the releases arose out of settling these claims. *See* Doc. 76 (referring to the releases as "a summary judgment in state court against these very sa[m]e defendant[s] . . . for the sum of

11

$18,000.00."). The Court therefore finds that amendment would be futile with respect to any claims brought by Plaintiffs Randy and Brandon, and DENIES amendment with respect to the joinder of those Plaintiffs and the addition of the unlawful imprisonment claim, which was brought only with respect to those Plaintiffs.

## C. Amendment of State Law Claims

Although Defendants only object to the joinder of Plaintiffs Brandon, Randy, and M.C., a court may *sua sponte* dismiss any meritless claims. *See Webster v. Penzetta*, 458 F. App'x. 23, 25 (2d Cir. 2012) ("A district court has inherent authority to dismiss meritless claims *sua sponte*"); *Perl v. American Exp.*, Nos. 12 Civ. 4380 (ER), 12 Civ. 4796 (ER), 2012 WL 2711270, at *1 (S.D.N.Y. July 9, 2012) ("The Court has the authority to screen *sua sponte* an *in forma pauperis* complaint at any time pursuant to 28 U.S.C. § 1915(e)(2)(B).").

As the Court explained in its March 28, 2017 Order dismissing all of Plaintiffs' state law claims, New York General Municipal Law Section 50 requires that before a plaintiff asserts state tort claims against a municipal entity *or its employees*, he must serve a notice of claim within ninety days after the claim arises. *See* N.Y. Gen. Mun. Law §§ 50-e, 50-i. Federal courts exercising supplemental jurisdiction over state law claims must strictly construe New York's notice of claim requirements. *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012); *see also Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) ("Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.").

In its March 28, 2017 Order, the Court dismissed Plaintiffs' state law claims because "nothing in the Amended Complaint indicates that Plaintiffs filed the requisite notice of claim." *See* Doc. 61 at 22. In the proposed SAC, Plaintiffs have raised several new tort claims,

12

presumably brought under state law, including claims for malicious prosecution, civil conspiracy, failure to supervise, and negligence. *See* SAC ¶¶ 57–65. Each of these tort claims are subject to Sections 50-e and 50-i. *See Fincher v. County of Westchester*, 979 F. Supp. 989, 1002–03 (S.D.N.Y. 1997) (applying the notice of claim requirement to claims of negligent supervision); *Blue v. City of New York*, No. 14 Civ. 7836 (VSB), 2018 WL 1136613, at *17 (S.D.N.Y. Mar. 1, 2018) (applying the notice of claim requirement to state law conspiracy claims); *Lambert v. City of New York*, No. 12 Civ. 4715 (AT), 2014 WL 8708238, at *8 (S.D.N.Y. June 16, 2008) (applying the notice of claim requirement to a state law claim for malicious prosecution); *Kravtsov v. Town of Grenburgh*, No. 10 Civ. 3142 (CS), 2012 WL 2719663, at *21 (S.D.N.Y. July 9, 2012) (applying the notice of claim requirement to state law negligence claims).

As in the Amended Complaint, Plaintiffs have failed to allege that they filed the requisite notice of claim and complied with the requirements of Sections 50-e and 50-i. The Court therefore cannot grant amendment with respect to Plaintiffs' state law claims for malicious prosecution, civil conspiracy, failure to supervise, and negligence.

### D.     Amendment of § 1983 Claims

Although the Court has dismissed Plaintiffs' state law claims for malicious prosecution and conspiracy, those claims may also be brought under § 1983 if they rise to the level of a constitutional violation. *See Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (finding that to prevail on a § 1983 claim based on malicious prosecution, a plaintiff must show a violation of his Fourth Amendment rights and must establish the elements of malicious prosecution under state law); *Cipolla v. County of Rensselaer*, 20 F. App'x 84 (2d Cir. 2001) (noting that a plaintiff may bring a § 1983 claim based on a conspiracy to present false

13

testimony).  Notice of claim requirements do not apply to claims brought under § 1983.  *See Felder v. Casey*, 487 U.S. 131, 140 (1988).

Therefore, reading the proposed SAC in the light most favorably to Plaintiffs, it raises four claims under § 1983:  (1) illegal search and seizure, *see* SAC ¶ 57; (2) malicious prosecution, *see* SAC ¶ 57(a); (3) conspiracy to unlawfully search, restrain, and charge Plaintiffs, *see* SAC ¶ 58; and (4) conspiracy to present false testimony, *see* SAC ¶ 60.  The first three of these claims are brought against the City of New York as well as the Officer Defendants.  *Id.* ¶¶ 57–58.  However, the Court has already explained why Plaintiffs insufficiently alleged *Monnell* liability in its March 28, 2017 Order, and finds that there are no allegations new to the proposed SAC that could support the imposition of *Monnell* liability.  *See* Doc. 61 at 17–21.  Therefore, the Court DENIES leave to amend these claims against the City, but GRANTS leave to amend as against the Officer Defendants.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' request is GRANTED in part and DENIED in part.  Specifically, Plaintiffs' request to amend is:

1. DENIED with respect to the addition of Plaintiffs M.C., Brandon, and Randy.

2. DENIED with respect to the claims for failure to supervise (Paragraph 59 of the proposed SAC), negligence (Paragraph 62 of the proposed SAC), unlawful imprisonment (Paragraph 63 of the proposed SAC), negligent and intentional infliction of emotional distress (Paragraph 64 of the SAC), and gross negligence (Paragraph 65 of the SAC).

3. DENIED with respect to allegations of municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

4. GRANTED with respect to claims brought under § 1983 for illegal search and seizure (Paragraph 57 of the proposed SAC), malicious prosecution (Paragraph 57(a) of the proposed SAC), conspiracy to present false testimony (Paragraph 58 of the proposed SAC), and conspiracy to unlawfully restrain, search, and charge Plaintiffs (Paragraph 60 of the proposed SAC).

14

The parties are directed to appear for a conference on **May 30, 2018 at 11:30 a.m.** The Clerk of Court is respectfully directed to terminate the motion, Doc. 73, and to mail a copy of this opinion to Plaintiffs.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated: May 3, 2018
New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　Edgardo Ramos, U.S.D.J.